IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | |
|---|---|
| ROSA L. THOMAS, individually and as Class representative for all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA CORPORATION, et al.,<br><br>    Defendants. | *<br>*<br>*<br>*<br>*     CASE NO. 3:08-CV-68 (CDL)<br>*<br>*<br>*<br>* |

O R D E R

Plaintiff filed her Complaint in the Superior Court of Clarke County, Georgia, seeking to represent a class of Defendants' Georgia customers who purchased Defendants' "Credit Protection Plus" products but were ineligible to receive certain benefits of those products. Defendants removed the action to this Court, contending that jurisdiction is appropriate under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (codified in scattered sections of 28 U.S.C.). Plaintiff timely filed her Motion to Remand (Doc. 4). As discussed below, Plaintiff's Motion to Remand is granted, and this action is remanded to the Superior Court of Clarke County. Because the Court does not have subject matter jurisdiction over this action, Defendants' Motion to Dismiss (Doc. 6) is moot. *See Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) ("[A] federal court must remand for lack of subject matter

jurisdiction notwithstanding the presence of other motions pending before the court.").

## FACTUAL BACKGROUND

Plaintiff alleges that she purchased a debt cancellation product called Credit Protection Plus ("CPP") from Defendants in connection with her Bank of America credit card. (Compl. ¶¶ 21, 40.) For 95 cents per $100 of outstanding balance on a credit card account per month, CPP, which is a "bundled" credit insurance product, provides credit life insurance, credit accident and sickness insurance, involuntary unemployment insurance, hospitalization insurance, unpaid family leave of absence insurance, and other benefits. (*Id.* ¶¶ 25, 35.) According to Plaintiff, the payment of benefits for most of the CPP components is contingent upon the customer being employed for at least 30 hours per week. (*Id.* ¶ 26.) CPP is not available a la carte—in other words, if a customer wants the CPP components that do not require full-time employment, she must purchase the entire bundle, including those components that require full-time employment, even if the customer is not eligible to receive benefits under those components. (*Id.* ¶¶ 37-38.) When Defendants solicited CPP customers, CPP customers allegedly were not told that payment of benefits for most of the CPP benefits would be contingent upon full-time employment, and potential customers were not screened to determine whether they were eligible for all CPP benefits. (*Id.* ¶¶ 41-45.) Plaintiff alleges that only 27 cents per $100 per month is

charged for CPP components that do not require full-time employment and that the other 68 cents per $100 per month is charged for components that do require full-time employment. (*Id.* ¶ 36.)

Plaintiff seeks to represent a class of similarly situated Georgia CPP customers, and her proposed class period is June 2, 2002 to the present. (*Id.* ¶¶ 52-53.) She seeks certification of a class under O.C.G.A. § 9-11-23(b)(2), and her proposed class is:

> All Georgia residents who have (or had within the applicable statute of limitations) a credit account with Defendants and have enrolled in, and paid premiums for Defendants' "Credit Protection Plus" products.

(*Id.* ¶ 54.) For this (b)(2) class, Plaintiff seeks a declaration that Defendants must provide a refund of certain fees to Georgia residents who were ineligible or became ineligible for any of the CPP bundled products during the time for which they paid fees. (*Id.* ¶ 55.) In the alternative, Plaintiff seeks certification of a class under O.C.G.A. § 9-11-23(b)(3), and her proposed class is:

> All Georgia residents who have (or had within the applicable statute of limitations) a credit account with Defendants and have enrolled in, and paid premiums for Defendants' "Credit Protection Plus" products who were ineligible for any of the bundled benefits at the time of purchase of Defendants' "Credit Protection Plus" products, or became ineligible for any of the bundled benefits within the time period in which said Georgia residents paid premiums to Defendants for coverage under the "Credit Protection Plus" products.

(*Id.* ¶ 56.) Plaintiff asserts damages claims under several Georgia statutes, including the Georgia Racketeer Influenced and Corrupt Organizations Act, O.C.G.A. § 16-4-1, *et seq.* ("Georgia RICO"). Georgia RICO provides for treble damages. O.C.G.A. § 16-14-6(c).

3

Defendants filed a notice of removal, contending that jurisdiction is appropriate under CAFA. Defendants attached to their Notice of Removal a declaration from a Bank of America employee, which states: "From October 23, 2006 through June 30, 2008, Defendant [Bank of America] enrolled 77,787 customers and collected a total of $4,825,809 in fees from customers in Georgia for the Credit Protection Plus plan." (Morris Decl. ¶ 6, July 30, 2008.)

## DISCUSSION

Under CAFA, federal courts have original jurisdiction over class actions "in which the amount in controversy exceeds $5,000,000 and there is minimal diversity (at least one plaintiff and one defendant are from different states)." *Miedema v. Maytag Corp.*, 450 F.3d 1322, 1327 (11th Cir. 2006) (internal quotation marks omitted); *see also* 28 U.S.C. § 1332(d)(2), (6). In addition, the number of members of all proposed plaintiff classes must exceed 100. 28 U.S.C. § 1332(d)(5)(B). A class action may be removed to a federal court in accordance with 28 U.S.C. § 1446 if the federal court has original jurisdiction over the action. 28 U.S.C. § 1453(a), (b).

The removing party "bears the burden of proof with regard to establishing federal court jurisdiction." *Miedema*, 450 F.3d at 1328 (internal quotation marks omitted); *accord Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1208 (11th Cir. 2007). Where, as here, damages are unspecified, the removing party bears the burden of establishing the jurisdictional amount by a preponderance of the evidence. *Lowery*,

4

483 F.3d at 1210.  "If the jurisdictional amount is either stated clearly on the face of the documents before the court, or readily deducible from them, then the court has jurisdiction.  If not, the court must remand."  *Id.* at 1211.  The removal statutes are construed narrowly, and where the parties clash about jurisdiction, uncertainties are resolved in favor of remand.  *Miedema*, 450 F.3d at 1328-30.

Under 28 U.S.C. § 1446, the defendant must remove within thirty days of receiving the document that provides the basis for removal. 28 U.S.C. § 1446(b).  In assessing the propriety of removal under § 1446(b), "the court considers the document received by the defendant from the plaintiff—be it the initial complaint or a later received paper—and determines whether that document and the notice of removal unambiguously establish federal jurisdiction."  *Lowery*, 483 F.3d at 1213.  In making this assessment, the court

> has before it only the limited universe of evidence available when the motion to remand is filed—i.e., the notice of removal and accompanying documents.  If that evidence is insufficient to establish that removal was proper or that jurisdiction was present, neither the defendants nor the court may speculate in an attempt to make up for the notice's failings.

*Id.* at 1214-15 (footnotes omitted).  "The absence of factual allegations pertinent to the existence of jurisdiction is dispositive and, in such absence, the existence of jurisdiction should not be divined by looking to the stars."  *Id.* at 1215.

Here, it is undisputed that minimal diversity exists. However, Plaintiff contends that there is no allegation or evidence that the amount in controversy exceeds $5,000,000 or that there are more than 100 prospective plaintiffs. Neither the amount of damages per class member nor the number of potential class members is clear from the face of the Complaint. Defendants contend, however, that both the class size requirement and the amount in controversy requirement are met because Defendants had more than 77,000 Georgia CPP customers from whom they collected more than $4.8 million during the proposed class period.[1] Since Plaintiff seeks treble damages under Georgia RICO (Compl. ¶ 88), along with attorneys' fees, Defendants contend that the amount in controversy exceeds $18 million. Defendants argue that it is appropriate to use these numbers because Plaintiff defined her class to include all Georgia CPP customers, not just those who were ineligible for certain benefits. (Defs.' Opp'n to Pl.'s Mot. to Remand 4 (citing Compl. ¶ 54).) While paragraph 54 of the Complaint does define Plaintiff's 23(b)(2) class as all Georgia CPP customers, Defendants ignore paragraph 55 of the Complaint, which refines the

---

[1] Plaintiff seeks damages in the amount of premiums they paid for those portions of CPP for which she was not eligible, not a refund of *all* damages. (Compl. ¶¶ 55, 62.) Defendants argue that even if Plaintiff seeks such a limitation on damages the amount in controversy is still met because Plaintiff alleged that she was overcharged by 71% (68 cents of every 95 cents), and the amount in controversy can be deduced by the mechanical test of multiplying the total fees collected by 71%. However, as discussed below, not all of the Georgia CPP customers are part of Plaintiff's putative class. Moreover, since the amount of fees charged to a particular customer is based upon that customer's outstanding credit card balance, it is impossible to determine from the removal documents what portion of the total fees were paid by putative class members.

23(b)(2) class definition and clarifies that Plaintiff seeks damages only for those Georgia CPP customers who were ineligible for bundled benefits, and only in the amount of fees paid for benefits for which the customer was ineligible. (Compl. ¶ 55.) Likewise, Plaintiff's alternative proposed class definition includes only those Georgia CPP customers who were ineligible to receive certain CPP benefits. (*Id.* ¶ 56.)

Since Plaintiff does not contend that *all* Georgia CPP customers are entitled to relief, Defendants' declaration in opposition to remand—which contains figures regarding *all* Georgia CPP customers—is too broad in its calculations. Plaintiff seeks relief for only those Georgia CPP customers who were ineligible to receive certain CPP benefits. The only evidence presently before the Court regarding damages and class size is the total number of Georgia CPP customers and the total amount of fees they paid. There are no allegations in the Complaint suggesting what percentage of Georgia CPP customers were ineligible for certain CPP benefits or what percentage of the total fees they paid. Given the facts presently before the Court, determining the class size and amount in controversy would require sheer speculation. The Court declines to "look[] to the stars" to divine the existence of jurisdiction. *Lowery*, 483 F.3d at 1215. The Court concludes that there is great uncertainty regarding the amount in controversy and the class size, and that uncertainty must be resolved in favor of remand. The Court therefore finds that

7

Defendants have not established, by a preponderance of the evidence, that the amount in controversy exceeds $5,000,000.  Accordingly, the Court grants Plaintiff's Motion to Remand.

## CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand (Doc. 4) is granted, and this action is remanded to the Superior Court of Clarke County.  Defendants' Motion to Dismiss (Doc. 6) is moot in light of the Court's ruling on the Motion to Remand.

IT IS SO ORDERED, this 12th day of January, 2009.

                                      S/Clay D. Land
                                          CLAY D. LAND
                             UNITED STATES DISTRICT JUDGE